UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                      )
UNITED STATES OF AMERICA,            )
                                                      )
           v.                                          )        Criminal No. 04-0505 (PLF)
                                                      )        Civil Action No. 06-1184 (PLF)
DERRICK SWEET,                              )
                                                      )
                  Defendant.                      )
_____)


_____OPINION AND ORDER

_____This matter is before the Court on defendant's motion to vacate, set aside or

correct his sentence pursuant to 28 U.S.C. § 2255.  The United States has filed an opposition and

defendant has filed a reply.  Upon consideration of the arguments of the parties and the entire

record in this case, the Court will deny the motion.


I.  BACKGROUND

            In anticipation of an agreed-upon plea, the defendant was charged in a four-count

information, rather than by grand jury indictment.  He then pled guilty to two of those counts:

Count 3, charging unlawful possession of a firearm and ammunition by a prior convicted felon,

in violation of 18 U.S.C. § 922(g)(1), and Count 4, unlawful possession with intent to distribute

an unspecified amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

The plea agreement stated that "defendant's near-certain career offender status means his base

offense level will be at least 32, and his criminal history will be VI."  Plea Agreement Letter

("Plea") (Dec. 13, 2004) ¶ 3(c); see also id. ¶ 1(b) ("Your client knows that he almost certainly

will be subject to sentencing as a career offender under U.S.S.G. § 4B1.1.").  The plea, which

took place after the Supreme Court's decisions in <u>Blakely</u> and <u>Apprendi</u> but before its decision in <u>Booker</u>, specified that the defendant was waiving any sentencing rights that he might have under <u>Blakely</u> and <u>Apprendi</u> "and any cases interpreting these two Supreme Court decisions." <u>Id.</u> ¶ 2(b).[1]

      In return for this plea, the government agreed to dismiss the other two counts of the information:  Count 1, charging unlawful possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); and Count 2, unlawful possession with intent to distribute cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a).  Plea ¶ 5(c).  The former would have required a mandatory minimum sentence of ten years, and the latter an unspecified term of years to be run consecutive to any other sentence imposed.[2]  As part of the plea agreement, the government also agreed to a three-level downward adjustment in the base offense level for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines, and to a sentence at "the low end of the sentence range that the Court decides will govern this case." <u>Id.</u> ¶ 5(b), (d) ("For example, if the Court decides that the range is 151-to-188 months, the government will not seek a sentence longer than 151 months.").  Defendant entered his guilty plea on December 15, 2004.

---

[1]    <u>See</u> <u>United States v. Booker</u>, 543 U.S. 220 (2005); <u>Blakely v. Washington</u>, 542 U.S. 296 (2004); <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

[2]    While normally possession with intent to distribute five grams or more of cocaine base carries a five-year mandatory minimum sentence, if a person commits such a crime after a prior conviction for a drug felony offense, there is a mandatory minimum sentence of ten years.  <u>See</u> 21 U.S.C. § 841(b)(1)(B).  Defendant admitted that he was such a person in his plea agreement. <u>See</u> Plea ¶¶ 1(b), 3[a].

The Supreme Court decided <u>Booker</u> on January 12, 2005.  At a sentencing hearing on April 1, 2005,  the Court inquired whether defense counsel wished to make any arguments under <u>Booker</u>.  Counsel indicated that he believed he was precluded from doing so under the express terms of the plea agreement.  Transcript of April 1, 2005 Sentencing Hearing ("April 1 Tr.") at 2-3.  The Court suggested that if the defendant wished to withdraw his plea of guilty and go back to square one rather than be bound by the pre-<u>Booker</u> plea agreement, the Court would permit him to do so.  <u>Id</u>. at 3.  At that point, the Assistant United States Attorney explained his view of the potential consequences of such a decision.

The prosecutor stated that if there had been no pre-indictment plea the government would have asked a grand jury to return an indictment charging the defendant with possession with intent to distribute more than five grams of crack cocaine, an offense which normally would carry a five-year mandatory minimum sentence, but in this case a ten-year mandatory minimum (<u>see</u> note 2, <u>supra</u>), and with a violation of 21 U.S.C. § 860 (possession with intent to distribute within 1000 feet of a school), which would have increased the base offense level by two levels.  He also stated that the government would have asked the grand jury to charge a violation of 18 U.S.C. § 924(c), a weapons offense carrying a five-year mandatory minimum sentence, a sentence which must run consecutively to any other sentence imposed, rather than the weapons offense charged in the information under 18 U.S.C. § 922(g).  <u>See</u> April 1 Tr. at 6-8.  The Assistant United States Attorney also pointed out that if the defendant had been convicted after trial under Section 924(c) he would have faced a sentence of 360 months to life imprisonment under the career offender guidelines or, if there had been a plea to a Section 924(c)

charge, a sentence of 262 to 327 months' imprisonment.  Id. at 7-8.[3]  At the conclusion of the

April 1, 2005 hearing, defense counsel requested a continuance in order to talk with his client

about "the meaning of all this and whether he wants to pursue a different option."  Id. at 14.

      At the sentencing hearing, three weeks later on April 26, 2005, defense counsel

informed the Court that he and the defendant had discussed whether the defendant wanted to

withdraw his plea and the defendant had decided not to do so.  Transcript of April 26, 2005

Sentencing Hearing ("April 26 Tr.") at 2, 4.  The following colloquy occurred:

> [DEFENSE COUNSEL]:  The problem with withdrawing the plea,
> and this is something that we had arrived at earlier in the plea
> negotiations, if the plea had not been taken the government would
> have indicted him. And based on his criminal history, he would
> have been looking at at least a 15 year mandatory on the 841(a) for
> possession with intent to distribute five grams or more, which is a
> five year mandatory. Because [defendant has ] . . . a prior
> conviction of a serious drug felony, it would have made it into a
> ten year mandatory. The 924(c) would have been indicted, and that
> would have been a five year mandatory.[4]
>
> THE COURT:  And that would be consecutive, the 924(c); is that
> correct?
>
> [DEFENSE COUNSEL]:  That's correct, Your Honor. So even
> looking at it from that approach, he would have been looking at
> 180 months mandatory as opposed to 151. If we had looked at it
> from the point of view of, at just the career offender guidelines, he
> would have been at the top of the range, and that is 360 to life with

---

[3]    The prosecutor relied upon Section 4B1.1(c)(3), governing career offenders convicted of violating 18 U.S.C. § 924(c) for these assertions -- noting, again, the benefit the defendant had received by being offered a plea to a weapons offense under 18 U.S.C.  § 922(g) rather than going to trial on, or even pleading guilty to, the weapons offense specified in 18 U.S.C.  § 924(c).

[4]    The Court understands this statement to mean not a 15-year mandatory sentence on the cocaine base charge and an additional five years, required to run consecutively on the gun charge, for a total of 20 years but a *total* of 15 years -- a 10-year mandatory minimum on the drug charge and a consecutive five years on the gun charge.

> a five year consecutive, or to whatever the life count would have
> been. He would have gone to a three point reduction, bringing him
> to 262 to 327 months.
>
> *   *   *
>
> So in both scenarios, both from the career offender guidelines and
> also just from the statutory mandatory minimum that would have
> applied, Mr. Sweet would have been looking at a significant[ly]
> higher sentence.

Id. at 2-4.

Defense counsel also stated that since the April 1 hearing he had spoken with

defendant "on a couple of occasions," that they had "looked at the numbers" and the "mandatory

minimums that apply," and that defendant had "indicated . . . that he did not want to withdraw

the plea, that he just wanted to go forward with sentencing today." April 26 Tr. at 4. The Court

then asked the defendant: "[D]o you continue to agree that this was about the best deal you could

have gotten, and that you're satisfied with that deal?" Id. at 7.

> THE DEFENDANT:  Well, I have to be in a way, yes, I'm satisfied
> to a point where when I looked at it, if I were to [get] indicted, and
> I mean, if it could have been lower, yes, I would have took it lower.
>
> *   *   *
>
> THE COURT:  I assume from what you're saying and what
> [defense counsel] said, you don't want to take the risk of going to
> trial and getting a much more serious sentence.
>
> THE DEFENDANT:  Yes.
>
> *   *   *
>
> [ASSISTANT U.S. ATTORNEY]:  It's very difficult, Your Honor,
> for anybody to say that they're satisfied with a deal that sticks them
> in [the] tank for 151 months. I can understand Mr. Sweet being
> reluctant to say, yeah, I'm really pleased with what's going to

happen, but it is as it is. And I think he's clearly said that he understands his options and believes he did as well as he could have.

THE COURT:  Is that about right, Mr. Sweet?

THE DEFENDANT:  Yes, sir.

Id. at 7.

Once the defendant affirmatively stated that he did not wish to withdraw his guilty plea and wanted instead to go forward with sentencing, the Court formally announced what everyone present already knew -- namely, that the Guideline sentencing range with respect to the charges to which the defendant had pled guilty was 151 to 188 months.  The Court then went on to consider factors in mitigation under 18 U.S.C. § 3553(a) and Booker, but concluded that there was no reason for it to vary from the Guidelines.  The Court explained:

> Then I think that after Booker, I need to consider the factors under 3553(a), and I've done that.  And in view of his prior criminal history and in view also of the factors that have been brought to my attention by [defense counsel and the prosecutor] over these two sessions, and the negotiations that went on, I think that there are no factors under 3553(a) that would justify departing below his guideline range in view of all the circumstances and in view of what he could have faced or would have faced had he not negotiated through [defense counsel] in the circumstances a very favorable plea.

April 26 Tr. at 13.[5]  The Court then sentenced the defendant to 120 months on Count 3 and 151 months on Count 4, the sentences to be served concurrently.  Id. at 14-15.

---

[5]      While the defendant was not free to request a variance from the Guidelines under the terms of the plea agreement, or present argument or evidence in support of such a request, the Court believed it was required by Booker *sua sponte* to consider the factors set forth in 18 U.S.C. § 3553(a).

## II.  DISCUSSION

The defendant now argues that his lawyer provided ineffective assistance of counsel because his counsel failed to argue to the Court under <u>Booker</u> for a sentence less than the 151 month minimum called for by the applicable Guideline sentencing range.  He maintains that his counsel should have presented several character witnesses at sentencing who could have provided "mitigating information which may have led to [Mr. Sweet] receiving a substantially lesser sentence" than the 151 months that he received.  Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence ("Def. Mot.") at 3.  He does *not* challenge his guilty plea itself.  <u>See</u> Def. Mot. at 7 (requesting that the Court vacate the sentence imposed, "re-open the sentencing proceeding to allow the introduction of further evidence; and after such proceeding re-sentence Movant");  Movant's Reply to Government's Opposition to Motion to Vacate Sentence Pursuant to § 2255 ("Def. Reply") at 5 ("It must be noted, however, that Movant is not attempting to dishonor his plea of guilty.").

To prevail on a claim for ineffective assistance of counsel pursuant to 28 U.S.C. § 2255, a defendant must show (1) that his lawyer's performance was "deficient," that is, that counsel "made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment;" and (2) that his lawyer's deficient performance "prejudiced the defense."  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  <u>Id</u>. at 690.  Furthermore, "[j]udicial scrutiny of counsel's performance must be highly deferential."  <u>Id</u>. at 689.

The "benchmark" for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process" that there is a question of whether there was "a just result." Strickland v. Washington, 466 U.S. at 686. When a lawyer's asserted errors were motivated by a reasonable strategic decision, however, the error does not amount to deficient performance, let alone ineffective assistance of counsel under Strickland. See id at 689-90; see also United States v. Calderon, 163 F.3d 644, 646 (D.C. Cir. 1999); United States v. Ramsey, 323 F. Supp. 2d 27, 35 n.2 (D.D.C. 2004). To show that counsel's deficient performance prejudiced his defense, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," in other words, it "is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694. The prejudice test is *not* met merely because the defendant can show that his counsel's errors "had some conceivable effect on the outcome of the proceeding." Id. at 693.

In the circumstances of this case, the Court concludes that the defendant cannot demonstrate that his lawyer's performance was ineffective or prejudiced him in any way. Counsel vigorously negotiated a very favorable plea agreement that resulted in a dramatically lower Guideline sentencing range than the one he would have faced had he gone to trial on the cocaine base charge involving five grams or more of crack cocaine and on the Section 860 schoolhouse charge, and/or if no pre-indictment plea had been negotiated and he had been indicted under 18 U.S.C. § 924(c). The plea agreement to which the defendant agreed on December 12, 2004 included a provision stating that defendant could not avail himself of sentencing rights or procedures under Blakely or Apprendi, and potential sentencing rights or

procedures under the then-undecided <u>Booker</u> decision.  Plea ¶ 2(b).  When the case first came

before the Court for sentencing on April 1, 2005, it was clear to both defense counsel and the

government that if defense counsel were to offer arguments under <u>Booker</u>, it would constitute a

breach of the plea.  The only option, therefore -- and an option that was offered to the defendant

by the Court -- was to withdraw his plea of guilty and the agreement under which it was made so

that his counsel could make a <u>Booker</u> argument.  Withdrawing the plea would have exposed the

defendant to a trial, the potential consequences of which were described by the prosecutor at the

April 1 hearing and subsequently discussed by defense counsel with the defendant.

   If the defendant had gone to trial on the five-gram cocaine base charge, there

would have been a mandatory minimum sentence of five -- if not ten -- years in prison (<u>see</u> note

2, <u>supra</u>); and a conviction on the Section 860 1000-feet-of-a-school charge would have

increased the base offense level by two.  Furthermore, without a plea, there would have been no

three-level downward adjustment for acceptance of responsibility under Section 3E1.1 of the

Guidelines.  At an offense level 34 (rather than the 29 level the defendant was at as a result of the

plea) and a Criminal History Category VI, the defendant's Guideline sentencing range would

have been 262 to 327 months, rather than 151 to 188 months.  In addition, as noted <u>supra</u> note 3,

if he had been charged and convicted after trial under 18 U.S.C. § 924(c), the defendant would

have faced a Guideline sentencing range of 360 months to life in prison.

   As the government pointed out in its opposition to defendant's motion:

> By statute, the Schoolhouse Charge was punishable by up
> to 20 years' imprisonment and the § 922(g) charge by up to 10
> years' imprisonment. The PWID charge and the § 924(c) charge

carried statutory mandatory minimum terms of imprisonment.
Under the PWID statute, because defendant had a prior felony
conviction for a drug offense, he was subject to a mandatory
minimum 10 year term of imprisonment. Under § 924(c), he was
subject to a mandatory minimum 5 year term of imprisonment, and
this term would be consecutive to any other sentence. 18 U.S.C.
§ 924(c)(1)(D)(ii).

Hence, by entering a pre-indictment plea in this matter,
defendant avoided (among other things) the possibility of a
statutory mandatory minimum 10 year sentence on a PWID charge
and the possibility of a statutory mandatory minimum 5 year
sentence, to be served consecutively, on a § 924(c) charge.
Significantly, "Booker did nothing to alter the rule that judges
cannot depart below a statutorily provided minimum sentence . . .
[A] district court has *no* discretion to impose a sentence outside of
the statutory range established by Congress for the offense of
conviction." United States v. Robinson, 404 F.3d 850, 862 (4th
Cir. 2005) (emphasis in original). Thus, as defense counsel []
pointed out at sentencing, if defendant had not entered this pre-
indictment plea, the statutory mandatory minimum sentences on
the charges that he would have faced meant that he "would have
been looking at 180 months *mandatory* as opposed to 151 [months
under the pre-indictment plea]."

Defense counsel [] also correctly recognized that if
defendant did not enter this pre-indictment plea, his exposure
under the Guidelines was even worse. Defendant qualified as a
career offender under the Guidelines. U.S.S. G. § 4B1.1. In
accordance with the "Career Offender Table" found at Section
4B1.1(c)(3), a career offender convicted at trial of a § 924(c)
charge has a Guidelines range of 360 months to life, and a career
offender who has pled guilty to this charge and received a three
point reduction for acceptance of responsibility has a Guidelines
range of 262 to 327 months. Moreover, regardless of whether the
career offender was found guilty of a § 924(c) charge or entered a
plea to a § 924(c) charge, his statutory mandatory minimum five-
year sentence on that charge would be served consecutively to any
other sentence.

United States' Amended Opposition to Defendant's Motion to Vacate, Set Aside, or Correct His Sentence Pursuant to 28 U.S.C. § 2255 ("Gov't Opp.") at 15-16 (citations and footnote omitted) (emphasis in original).

While the Supreme Court in Booker provided judges with a good deal of discretion to vary from the Sentencing Guidelines, it did not provide relief from statutory mandatory minimum sentences or consecutive sentencing mandated by Congress. Furthermore, even if the Court had wished to vary from the applicable Guideline sentencing range under Booker, the starting point under the Guidelines on the more serious charges likely would have been 360 months to life imprisonment after trial or, if there had been a plea, 262 to 327 months. Even if the Court had found mitigating factors after a conviction on these more serious charges, the Court could not have imposed a sentence of less than 180 months (a mandatory ten years on the five-gram crack cocaine charge and a mandatory five years, consecutive, on the Section 924(c) charge). Even in the unlikely event that the crack cocaine charge only carried a five-year mandatory minimum, for a total statutory mandatory sentence of a minimum of ten years, it is unlikely that the Court would have varied from the Guideline range so drastically -- that is from a minimum of 262 months under the Guidelines -- that it would have imposed a sentence of less than 151 months. As the Court noted at sentencing: "I think there are no factors under 3553(a) that would justify departing below his guideline range in view of all the circumstances. . . ." April 26 Tr. at 13.

Once the defendant agreed that he did not want to withdraw his plea of guilty and instead would remain bound by the plea agreement, he had waived his right to argue for a variance below the Guideline sentencing range under Blakely, Apprendi, and (most importantly)

Booker.  His counsel was thus constrained from arguing for a sentence of less than the
151-month low end of the Guideline range determined by the Court without breaching the
agreement.  Given these constraints under which defense counsel operated in making his
sentencing arguments, and in view of the government's agreement not to ask for more than 151
months, see Plea ¶¶ 5(b), (d), and the Court's eventual sentence of 151 months, defense counsel's
alleged failure to present additional mitigating evidence cannot be characterized as so "deficient"
that he "was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."
Strickland v. Washington, 466 U.S. at 687.  In fact, despite the constraints of the plea agreement
that prevented him from arguing that mitigating factors justified a sentence below the Guidline
range, defense counsel did bring to the Court's attention during his allocution certain mitigating
factors relating to the defendant's emotional problems during his childhood and his drug
addiction from a very early age.  See April 26 Tr. at 8-9.  The Court was also made aware of
these facts in advance of the hearing by the Probation Office's Presentence Investigation Report,
which defense counsel had also reviewed.  See Presentence Investigation Report ¶¶ 58, 60-66.  In
announcing the sentence, the Court noted those facts concerning the defendant's history, as well
as the "very favorable plea" that his counsel had obtained for him .  See April 26 Tr. at 10-11, 13.

It is apparent from the record that "counsel's assistance was reasonable
considering all the circumstances" and that his decisions regarding what information to present to
the Court at sentencing and how to present it without running afoul of the negotiated plea
agreement fell within "the range of legitimate decisions regarding how best to represent [this]
criminal defendant."  Strickland v. Washington, 466 U.S. at 688, 689.  The defendant likewise
cannot show prejudice in view of the evidence that his counsel did present and the arguments that

he did make, as there is no "reasonable probability" that additional character witnesses would have affected the outcome.  Id. at 694.

In sum, the record in this case does not show a lawyer who was ineffective but one who was extremely effective.  He was effective in negotiating a very favorable plea and in realistically and professionally assessing the impact of the mandatory minimum sentencing statutes enacted by Congress, the Guideline sentencing regime, and the options available after Booker to a career offender who -- if he had withdrawn his plea and gone to trial -- would have faced a number of mandatory minimum sentences, one of which would have had to have been run consecutively.  He was effective in arguing to the Court that the defendant deserved the lowest possible sentence in the Guideline sentencing range -- 151 months.  As a consequence of defense counsel's actions, the defendant received a far lower sentence than he would have had the plea been withdrawn so that defense counsel eventually could make a Booker argument after an indictment on the more serious charges, trial and conviction.  Accordingly, it is hereby

ORDERED that the motion [Docket No. 26] of defendant to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  May 14, 2007

13